

**SIGNED this 26th day of September, 2022**

/s/ Shelley D. Rucker
Shelley D. Rucker
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

| | |
|---|---|
| **In re:** | |
| **Jordan Daniel Santos,**<br>    Debtor. | **No. 1:20-bk-12993-SDR**<br><br>**Chapter 7** |
| | |
| **Brandin E. Rannick,**<br>    Plaintiff, | |
| v. | **Adv. No. 1:21-ap-01005-SDR** |
| **Jordan Daniel Santos,**<br>    Defendant. | |

## MEMORANDUM OPINION

**I.    INTRODUCTION**

Plaintiff Brandin Rannick is a party to a final divorce decree from state court that incorporates a marital dissolution agreement and a permanent parenting plan order with defendant Jordan Santos. In defendant's answer to plaintiff's third amended complaint, he admits that the final divorce decree qualifies as a domestic support obligation ("DSO") under 11 U.S.C. § 101(14A), meaning that the DSO is nondischargeable under 11 U.S.C. § 523(a)(5). Nonetheless,

plaintiff filed a motion for partial summary judgment (Doc. Nos. 47, 48) to deny defendant a discharge under 11 U.S.C. §§ 727(a)(4)(A), 727(a)(2)(A), and 727(a)(2)(B). The motion prompted the Court to question, *sua sponte*, whether plaintiff had standing to continue with the motion or with this adversary proceeding given that her personal stake in defendant's bankruptcy has been fully addressed through Section 523(a)(5). (Doc. No. 49.)

At the Court's invitation, the parties filed supplemental briefing to address whether plaintiff has standing and whether the requests for relief under Section 727 now are moot. (Doc. Nos. 51, 53.) After considering the parties' supplemental briefing and the record generally, the Court concludes that plaintiff's objection to the dischargeability of her DSO claim is sustained under Section 523(a)(5). Consequently, the Court finds that plaintiff lacks standing to proceed any further. The Court will deny plaintiff's motion for partial summary judgment; will enter judgment in favor of plaintiff on Count 13 of plaintiff's third amended complaint based on conclusive judicial admissions; and will dismiss the rest of the complaint for lack of subject-matter jurisdiction.

## II. BACKGROUND

This adversary proceeding concerns plaintiff's attempts not only to except her DSO from discharge but also to deny defendant a discharge altogether. On October 3, 2019, plaintiff filed for divorce from defendant in Hamilton County Circuit Court. (Doc. No. 48-2 at 2.) The state court entered a final divorce decree on January 27, 2020. (Doc. No. 34-1.) The final divorce decree incorporates by reference a marital dissolution agreement and a permanent parenting plan order that also were entered on January 27, 2020. Among other terms, plaintiff received a property settlement (*id.* at 8) and an award of child support (*id.* at 19).

Bankruptcy proceedings involving the parties began in late 2020. On November 16, 2020, defendant filed a voluntary Chapter 7 petition in Main Case No. 1:20-bk-12993-SDR (the "Main Case"). On January 23, 2022, the Chapter 7 Trustee asked the Clerk of the Court to issue a notice of assets and a notice to creditors to file proofs of claim. (Main Case, Doc. No. 49.) The notice issued on January 24, 2022, giving creditors a deadline of April 25, 2022, to file proofs of claim. (Main Case, Doc. No. 50.) Creditors filed seven claims in total; plaintiff filed Claim 7 on April 14, 2022 and Amended Claim 7 on April 26, 2022. In her amended proof of claim, plaintiff asserted a priority claim of $1,702.00 and stated that the basis of her claim was a "Domestic Support Obligation." (Mian Case, Claim 7-2 at 2, 3.)

Plaintiff filed her original adversary complaint on February 22, 2021 (Doc. No. 1) and her third amended complaint on January 14, 2022 (Doc. No. 34.).[1] The third amended complaint contains 16 counts. In 15 of the 16 counts, plaintiff accuses defendant of various acts that, if proven, would warrant a denial of discharge under 11 U.S.C. §§ 727(a)(4)(A), 727(a)(2), 727(a)(3), and 727(a)(5) if defendant could present no other defenses. Plaintiff used Count 13, spanning paragraphs 42 through 46 of the third amended complaint, to assert that she holds a DSO as defined by 11 U.S.C. § 101(14A). (*Id.* at 12–14.) Plaintiff concludes the third amended complaint with demands for relief that include a demand "[t]hat this Court find that Plaintiff is the holder of a DSO from Defendant and same is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) [and that] this Court liquidate the amount of the unsatisfied DSO at the time of hearing." (*Id.* at 17.)

---

[1] Plaintiff filed her first amended complaint on February 23, 2021 (Doc. No. 3) and her second amended complaint on June 10, 2021 (Doc. No. 22).

3

Defendant answered the third amended complaint on January 31, 2022. (Doc. No. 35.) With respect to Count 13, defendant pled no separate response to paragraph 42, which simply incorporated other paragraphs to which he had responded. (*Id.* at 6.) For paragraphs 43 through 46, defendant admitted that plaintiff holds a DSO that satisfies Section 101(14A) and acknowledged that the final divorce decree attached to the third amended complaint is authentic and speaks for itself. (*Id.* at 7.)

Plaintiff filed her pending motion for partial summary judgment on July 15, 2022. The motion is silent regarding Section 523(a)(5); plaintiff seeks summary judgment under 11 U.S.C. §§ 727(a)(4)(A), 727(a)(2)(A), and 727(a)(2)(B) only. In support of the motion, plaintiff cites to many of defendant's actions that, in her view, demonstrate intentional attempts to hide assets from creditors. The motion is supported by a total of 767 pages of briefing plus exhibits and other documents from proceedings in state court, including a 247-page transcript of defendant's deposition. Plaintiff's request for relief beyond the uncontested nondischargeability of her DSO prompted the Court to solicit feedback from the parties about plaintiff's standing.

Defendant filed a supplemental brief reviewing the cases cited by the Court in its briefing request as well as others. (Doc. No. 51.) Defendant concludes "that once the Court finds that there is a domestic support obligation involved, it is not necessary to liquidate the amount because it is all non-dischargeable." (*Id.* at 6.) Defendant also provides new information that "the Circuit Court of Hamilton County, Division 1, in case #19-D-1787 on July 20, 2022, has entered a final order regarding the domestic support obligation of the Defendant such that there is nothing further this Court can provide to the Plaintiff." (*Id.*)

4

Plaintiff filed a supplemental brief asserting that she does have standing to challenge defendant's discharge. (Doc. No. 53.) Plaintiff makes two major points. First, plaintiff argues that *Rosenfeld* is distinguishable because the bankruptcy court in that case had made a ruling on nondischargeability under Section 523(a), which made the challenge under Section 727(a) moot:

> However, this court has not yet made a ruling on the § 523 matter. Plaintiff agrees that once the § 523 dischargeability matter has been formally ruled upon, the § 727 jurisdiction on discharge lapses. That has not yet occurred. Just because that § 523 ruling *could* occur first, does not mean that it *should* occur. In fact, for equitable reasons the court should abate a ruling on the § 523 issue and rule in favor of Plaintiff on her Motion for Partial Summary Judgment that is pending before the court, which Motion is focused on the Debtor-Defendant's bad acts that mandate a ruling against him on § 727(a) grounds.

(Doc. No. 53 at 2.) Plaintiff's argument implies that, even in the absence of any dispute about whether a claim is a DSO that satisfies Section 101(14A), Section 523(a)(5) does not take effect until the Court says that it does.

Second, plaintiff makes an argument that the Court should exercise its equitable powers and rule on the Section 727 issues first. Plaintiff relies on *Ochadleus v. City of Detroit (In re City of Detroit)*, 838 F.3d 792 (6th Cir. 2016). "[U]sing the concepts borrowed from equitable mootness" (Doc. No. 53 at 3) and discussed in *City of Detroit*, plaintiff argues that the Court

> should consider whether rights of innocent third parties would be adversely affected. Additionally, another consideration is whether the public policy need for reliance upon the schedules would be undermined by this Court looking the other way.
>
> Debtor's incomplete and misleading failure to disclose his transfers misled the creditors and the Chapter 7 Trustee. But for Plaintiff's discovery, the Chapter 7 Trustee would not have known of his payments to his parents, and she would not have opened an estate administration. The Trustee relied upon his misleading schedules. He did not disclose thousands of dollars of transfers. If this Court moots the § 727(a) claims by ruling on the § 523 matters, this Debtor will be rewarded for his plan to build his "homestead" instead of paying his creditors. His intentional transfers to hinder his creditors will be sanctified by the Court.

5

(*Id.* (citing *City of Detroit*).)  For the reasons discussed below, the Court disagrees with both of plaintiff's arguments.

### III. DISCUSSION

#### A. *Standing and mootness generally.*

The Court invited the parties to address the issues of standing and mootness because "the case-or-controversy requirements of Article III apply to adversary proceedings brought in bankruptcy courts, even though bankruptcy courts are not Article III courts themselves." *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 698 F. App'x 300, 303 (6th Cir. 2017) (unpublished opinion) (citing *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852–54 (6th Cir. 2002)).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.  The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).  A plaintiff must satisfy three criteria to establish standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation and editorial marks and citations omitted).  "Likewise, mootness has two aspects: when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation marks and citation omitted).  "One

commentator has defined mootness as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 397 (internal quotation marks and citation omitted).

Because standing and mootness directly affect the Court's jurisdiction, the Court has the authority to raise the issues *sua sponte*. "Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (citation omitted); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties.") (citations omitted); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.") (citation omitted). Civil Rule 56(f), made applicable through Bankruptcy Rule 7056, also allows the Court to enter a judgment independent of the motion; the invitation to the parties to address standing and mootness, and the supplemental briefing that followed, provided notice and a reasonable time to respond. *See Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000) ("We have held that a district court may enter summary judgment sua sponte in certain limited circumstances, so long as the losing party was on notice that it had to come forward with all of its evidence.") (citation omitted).

7

### B. *Defendant's admissions about the DSO alleviate the need for the Court to conduct further proceedings on the Section 523 issue.*

The third amended complaint contains 16 counts, 15 of which allege conduct that would support an objection to discharge under multiple subsections of Section 727. Plaintiff has a motion for summary judgment on those counts pending. She supports it with 767 pages of briefing, affidavits, other documents, and deposition testimony. (*See generally* Doc. No. 48.) In contrast, Count 13 is not addressed in the motion, although there are no issues of fact remaining and, based on the pleadings, plaintiff would be entitled to a judgment. Plaintiff entered a final divorce decree prior to defendant's bankruptcy filing, and the terms are undisputed. The divorce decree incorporated a marital dissolution agreement and a permanent parenting plan order, and the combined documents include terms for a property settlement and for child support. Plaintiff consequently pled in the opening to her third amended complaint that she holds a domestic support obligation (Doc. No. 34 at 2 ¶3), which is defined in 11 U.S.C. § 101(14A) and exempted from discharge by operation of 11 U.S.C. § 523(a)(5). Plaintiff also pled Count 13, which seeks a determination that she holds a DSO and that it is nondischargeable. Plaintiff attached the divorce decree to her third amended complaint and thereby made it integral to her pleading.

The Court would have needed to schedule further proceedings and issue a ruling if defendant had denied that plaintiff's DSO satisfies Section 101(14A) or had challenged whether the obligation was reasonable under his financial circumstances. *See, e.g., Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998) (describing the factors that create a presumption that a state-court order is a support obligation for purposes of Section 523); *Lewis v. Lewis (In re Lewis)*, 423 B.R. 742, 750 (Bankr. W.D. Mich. 2010) ("The post-BAPCPA support nondischargeability language now simply states that a DSO debt is nondischargeable. Therefore, one must closely

8

examine the definition of a DSO.") (citing Section 101(14A)); *In re Boller*, 393 B.R. 569, 577–78 (Bankr. E.D. Tenn. 2008) (Stinnett, *J.*) (applying *Sorah* and finding that an agreement that the parties entered upon divorce did not meet the definition of a DSO in Section 101(14A)). Unlike the parties in these cases, defendant instead admitted in his answer that plaintiff holds a DSO and that the copy of the final divorce decree attached to the third amended complaint is authentic. (Doc. No. 35 at 2 ¶3.) Defendant further admitted Count 13 in all substantive respects. (*Id.* at 7 ¶¶ 43–46.) The above cases and others feature some kind of dispute over a DSO that necessitated a ruling about Sections 101(14A) and 523(a)(5). Here, though, defendant's admissions are conclusive:

> Judicial admissions eliminate the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue. Once made, the subject matter of the admission should not be reopened in the absence of a showing of exceptional circumstances. This court has observed that under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well.

*Ferguson v. Neighborhood Hous. Servs., Inc.*, 780 F.2d 549, 550–51 (6th Cir. 1986) (internal quotation marks and citations omitted); *see also Ahghazali v. Sec'y of Health & Human Servs.*, 867 F.2d 921, 927 (6th Cir. 1989) ("Statements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them."). Additionally, when plaintiff filed Amended Claim 7, she asserted that her DSO was the sole basis for her claim. (Main Case, Claim 7-2 at 2.) Defendant has not filed any objection to plaintiff's claim.

The combination of defendant's conclusive admissions and failure to object to plaintiff's claim strips the Court of any case or controversy regarding Count 13. Plaintiff's DSO definitively satisfies Section 101(14A), and further proceedings under Count 13 are unnecessary under Civil

9

Rule 56(f). The demand for relief at the end of the third amended complaint technically included a request to liquidate the amount of the unsatisfied portion of the DSO, but as long as the entire DSO is nondischargeable, "the State court in the divorce case can and should decide what the correct amount of the debt is." *Cowan v. Ladosenszky (In re Ladosenszky)*, 617 B.R. 275, 277–78 (Bankr. E.D. Mich. 2020) (citations omitted). In fact, the state court already might have done so, through the final order of July 20, 2022 that defendant disclosed in his supplemental briefing. When a debtor conclusively admits that a DSO satisfies Section 101(14A), Section 523(a)(5) operates automatically to make that debt nondischargeable, without the need for any judicial ruling that Section 523(a)(5) applies. *See Neal v. Neal (In re Neal)*, 302 B.R. 275, 279 (B.A.P. 8th Cir. 2003) (dismissing an appeal of a Chapter 13 discharge as moot; Section 523(a)(5) automatically would shield from discharge any maintenance award granted in the future in state court); *cf. Brown v. Brown (In re Brown)*, No. 18-10617-JLG, 2018 WL 4637465, at *4 (Bankr. S.D.N.Y. Sept. 25, 2018) (Section 727 adversary complaint dismissed for lack of subject-matter jurisdiction; plaintiff's equitable distribution claim, once liquidated by state court, automatically will be excepted from discharge under Section 523(a)(15)).

Plaintiff makes the additional argument that the Court should not dismiss the case because it has not yet issued a ruling regarding Section 523(a)(5). The argument implies that a ruling is needed to activate that section. First, the Court now has made a ruling, but that might not have even been necessary. The cases that the Court has cited above show that no activating ruling is required. *Cf. Matthers v. Matthers (In re Matthers)*, No. 10-11553-WHD, 2011 WL 1789981, at *2 (Bankr. N.D. Ga. Mar. 23, 2011) (Section 727 adversary complaint dismissed for lack of subject-matter jurisdiction; even before state court made any formal award of child support,

10

complaint failed "to assert any claim against Debtor that would not already be nondischargeable under section 523(a)(5) or (a)(15)"). Plaintiff also tries to distinguish *Rosenfeld* by arguing that the bankruptcy court there "*had ruled* on a § 523(a) matter." (Doc. No. 53 at 2.) The bankruptcy court in *Rosenfeld* issued no rulings about nondischargeability except for the same determination about jurisdiction that this Court is making here. Like this Court, it raised the jurisdiction issue *sua sponte*, though it used a show-cause order. Specifically, the *Rosenfeld* bankruptcy court only concluded conditionally that, "in the event that the state court enters an order requiring the Debtor to pay to Plaintiff the attorney fees and costs he incurred as a result of her being held in contempt of the Stipulated Order, such debt would be nondischargeable under § 523(a)(15)." *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 535 B.R. 186, 192 (Bankr. E.D. Mich. 2015), *aff'd*, 558 B.R. 825 (E.D. Mich. 2016), *aff'd*, 698 F. App'x 300 (6th Cir. 2017) (unpublished opinion). That conditional conclusion was not so much a ruling—there were no findings of fact—as it was a recognition that a provision of Section 523(a) automatically would except from discharge an award from state court regarding divorce proceedings. The Court does not find plaintiff's argument persuasive and concludes that the reasoning in *Rosenfeld* is applicable here.

### C. Plaintiff's full relief under Section 523(a)(5) denies her standing under Section 727(a).

Plaintiff's full relief on Count 13 of the adversary complaint settles what must happen with the other 15 counts. A denial of discharge under Section 727(a) affects all creditors, but plaintiff cannot act for other creditors unless her actions also would help her:

> The only injury which the Plaintiff's complaint even arguably seeks to avoid is the discharge of the debt owed to her by the Debtor. But in this case, it is clear, and the Plaintiff does not dispute, that any debt the Debtor owes Plaintiff, and which is the subject of her adversary complaint, arises from one or more orders issued by the state court in the parties' pending divorce case. Thus it is clear, and Plaintiff does not dispute, that the debt in question will not be discharged even if the Debtor

11

>obtains a discharge in his Chapter 7 case. A discharge under § 727 does not discharge any debt that is nondischargeable under 11 U.S.C. § 523. *See* 11 U.S.C. § 727(b). The debt in question clearly is nondischargeable under one of the following two provisions of § 523: either under § 523(a)(5), if the debt is a "domestic support obligation" (as Plaintiff contends it is in her response to the Show–Cause Order); or under § 523(a)(15), if the debt is not a "domestic support obligation." Section 523(a)(15) clearly applies here if § 523(a)(5) does not (*i.e.*, if the debt is not a "domestic support obligation,") because the debt alleged in Plaintiff's complaint clearly is a debt to "a spouse, . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record." 11 U.S.C. § 523(a)(15).
>
>Thus, it is clear that none of the debt in question will be discharged even if the Debtor obtains a discharge in his Chapter 7 case. So Plaintiff Gloria Mapley will suffer no injury if the Debtor obtains his Chapter 7 discharge. It follows that the relief Plaintiff seeks in this adversary proceeding would give her nothing she does not already have—what she already has is a claim against the Debtor that will not be discharged in the Debtor's Chapter 7 case. Thus, Plaintiff can gain nothing for herself by blocking the Debtor's discharge under § 727. And Plaintiff does not have standing to object to the Debtor's discharge solely on behalf of *other* creditors.

*Mapley v. Mapley (In re Mapley)*, 437 B.R. 225, 228–29 (Bankr. E.D. Mich. 2010) (citing *Day v. Klingler (In re Klingler)*, 301 B.R. 519, 525 (Bankr. N.D. Ill. 2003)). As the Court noted in its order soliciting supplemental briefing, creditors who do not want their debts discharged can avoid discharge either through individual nondischargeability under Section 523(a) or through a general denial of discharge under Section 727(a). Once a creditor receives relief under one of those statutes, a request for relief under the other statute becomes moot. *See Surgical Cap. Sols. v. Awaisi (In re Awaisi)*, 627 B.R. 886, 887 (Bankr. E.D. Mich. 2021) (dismissing an adversary proceeding under Section 523(a) where a waiver of discharge was entered previously under Section 727(a)(10), because "the Court is no longer able to grant Plaintiff any meaningful relief in addition to what it has already received") (citing *Rosenfeld*; other citations omitted); *Mich. Unemployment Ins. Agency v. Pettibone (In re Pettibone)*, 577 B.R. 689, 690 (Bankr. E.D. Mich. 2017) (same). Plaintiff finds herself in this situation. Full relief under Section 523(a)(5) came

first, by way of defendant's conclusive admissions about the DSO. As a result, relief under Section 727(a) cannot give plaintiff anything that she does not already have.

Plaintiff's analogies to the court's exercise of its equity powers in *Ochadleus v. City of Detroit* do not change the above analysis. Equitable mootness "is perhaps best described as merely an application of the age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties." *Matter of Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994) (citations omitted). In *City of Detroit*, the bankruptcy court found the appeal of a confirmation order to be moot because of the impact of overturning a plan confirmation on third parties who relied on the confirmation order. The bankruptcy court confirmed a Chapter 9 plan after extensive proceedings that included "intricate and carefully woven settlements" between the city and nearly all creditors and stakeholders. *Ochadleus v. City of Detroit (In re City of Detroit)*, 838 F.3d 792, 795 (6th Cir. 2016) (internal quotation marks omitted). Pensioners of the city's General Retirement System appealed the plan confirmation because they opposed provisions of the plan that reduced their pension benefits. The Sixth Circuit held that equitable mootness remained a viable doctrine; that equitable mootness was available in Chapter 9 bankruptcies; and that under principles of equitable mootness, the appeal had to be dismissed because "the appellants did not obtain a stay; the Plan has been substantially consummated, inasmuch as numerous significant—even colossal—actions have been undertaken or completed, many irreversible; and the requested relief of omitting the bargained-for (and by majority vote agreed-upon) pension reduction would necessarily rescind" nearly $1 billion of pension settlements and funding arrangements, which in turn would unravel the plan. *Id.* at 799.

13

There are several reasons why the Court will not exercise its equitable powers in this case. This case is factually very different from *City of Detroit*. There is no order on appeal on which creditors have relied. There are no third parties in this case who are relying on plaintiff to prevent this debtor's discharge. Not the U.S. Trustee, the Chapter 7 Trustee, nor any other creditor has joined in this adversary proceeding or filed their own proceeding seeking to deny the debtor his discharge.

Only plaintiff's argument about public policy gives the Court pause. In most equitable mootness cases, that policy is affording finality to a bankruptcy court judgment or ensuring the success of a confirmed plan. Here, plaintiff argues that the public policy is providing a discharge to only "honest" debtors. In support of that policy, the Bankruptcy Code denies a discharge to an individual who attempts to hinder, delay, and defraud creditors, or who makes false statements in the case. 11 U.S.C. § 727(a)(2) and (4). The debtor must provide accurate and complete schedules and statements of financial affairs. 11 U.S.C. § 521(a). Without debtors' compliance with those duties, the whole system slows down because trustees and creditors have to pursue discovery and litigation to find assets and transfers before even beginning avoidance and recovery actions. Filing a series of amendments asking forgiveness each time a debtor gets caught does little to increase the system's efficiency.

The Court is sympathetic with plaintiff's frustration with this debtor. The Court is also concerned about the impact that a dismissal for lack of standing in this context will have on the integrity of the bankruptcy system if, from plaintiff's view, defendant's alleged misconduct will be allowed to go unchecked. The Court also understands that its ruling blocks a former spouse

14

who holds only an uncontested DSO from bringing an objection to discharge under Section 727 because of lack of standing.

After consideration of the facts in this case, the existence of safeguards for future cases, and the weight to be given other public policies, the Court concludes that the system can sustain such a ruling.

First, nothing in this opinion should be read as this Court's condoning carelessness or dishonesty in the debtor's preparation of his schedules and statement of financial affairs. The Court is well aware of the consequences of failing to disclose transfers and assets. This Court has been on record for more than a decade regarding its view of such conduct. *See generally Jahn v. Flemings (In re Flemings)*, 433 B.R. 230 (Bankr. E.D. Tenn. 2010).

Second, the ruling does not harm plaintiff or others similarly situated. As noted above, the Court has granted the plaintiff all the relief it can. Her debt is nondischargeable. The Court's ruling does not impair the special priority given to holders of domestic support obligations to enhance their chances of recovery. *See The Law Offices of Miriam G. Altman, P.C. v. Johnson (In re Johnson)*, 445 B.R. 50, 59–60 (Bankr. D. Mass. 2011) (discussing the protections that Congress has provided to family obligations over the policy of providing the debtor a fresh start). Those claimants have been given priority status over other priority creditors and the unsecured creditors, and over the policy of providing the debtor a fresh start. Their debts are automatically excepted from discharge without the need of filing a complaint. In this case in particular, plaintiff's $1,702.00 claim will not have to compete with those other unsecured creditors whose claims will be discharged. The Code does not authorize them to pursue an objection when they no longer have a financial interest.

Third, the Court does not view this opinion as a risk to the operation of the bankruptcy system. The former spouse might be the creditor with the most information regarding a dishonest debtor's fraudulent intentions or hidden assets; however, nothing in this Court's ruling prevents the former spouse from sharing that information with a trustee. A trustee may certainly investigate the debtor's transactions with a former spouse and family members. If assets are discovered, the Bankruptcy Code allows the trustee, or another creditor with a financial interest in the outcome, to bring the objection. Also, a party can bring a motion to dismiss for abuse under 11 U.S.C. § 707(b)(1) or can seek revocation of a discharge under 11 U.S.C. § 727(d). But even those proceedings may not always be successful because of countervailing policies. The objecting creditor must still overcome the policy that objections to discharge and dischargeability are liberally construed in favor of the debtor. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (citation omitted).

Finally, the Court's holding recognizes the limits of this Court's jurisdiction. As discussed in detail above, it may only hear actual cases and controversies.

## IV. CONCLUSION

For all of the above reasons, the Court concludes that it lacks subject-matter jurisdiction over this adversary proceeding. Accordingly, the Court will deny plaintiff's motion for partial summary judgment (Doc. No. 47); will enter judgment in favor of plaintiff on Count 13 of plaintiff's third amended complaint based on conclusive judicial admissions; and will dismiss the rest of the complaint for lack of subject-matter jurisdiction.

A separate order will follow.

# # #